**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JEAN F. ELLIOTT, JR.                                                                                          PLAINTIFF

V.                                          NO. 5:09CV00196 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                                  DEFENDANT

**MEMORANDUM AND ORDER**

**I. Introduction**

Plaintiff, Jean F. Elliott, Jr., has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs (docket entries #25 and #29), and the issues are now joined and ready for disposition.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

---

[1]Plaintiff filed a Motion for Summary Judgment (docket entry #24) and a Brief in Support of Summary Judgment (docket entry #25), which the Court collectively will construe as Plaintiff's Appeal Brief. It is the practice in the Eastern District of Arkansas for Social Security disability appeals to be submitted on Appeal Briefs, *not* on summary judgment papers.

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On April 7, 2005, Plaintiff filed applications for SSI and DIB, alleging disability since September 1, 2002. (Tr. 45-47, 66-68). After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). On October 10, 2006, the ALJ conducted an administrative hearing, during which Plaintiff and a vocational expert ("VE") testified. (Tr. 317-44).

At the time of the administrative hearing, Plaintiff was 49-years old, had completed one year of undergraduate college, and two years of vocational college. (Tr. 320). His past relevant work included jobs repairing televisions and operating a press. (Tr. 320-21, 341-42).

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.*, § 404.1520(4)(ii), § 416.920. If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920. If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920. If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his April 5, 2007 decision (Tr. 12-17), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date; (2) had "severe" impairments consisting of degenerative disc disease and arthritis, that did not meet a Listing; (3) was not fully credible; (4) had the RFC to lift and carry up to 20 pounds occasionally, stand and walk, without interruption, for 2 hours at a time for a total of 6 hours in an 8-hour workday, sit for 2 hours, without interruption, for 2 hours at a time for a total of 6 hours in an 8-hour workday, occasionally climb, balance, stoop, crouch, kneel, and crawl, and could push or pull 20 pounds; (5) could not perform his past relevant work; but (6) had the RFC to perform other jobs in the national economy, including positions as a product assembler and a final inspector/checker. (Tr. 16-17). Thus, the ALJ held that Plaintiff was not disabled. (Tr. 17).

On May 28, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-7). Plaintiff then filed his Complaint appealing that decision to this Court. (Docket entry #2).

## II.  Analysis

In Plaintiff's Appeal Brief (docket entry #25), he argues that the ALJ erred: (1) in not giving adequate weight to the opinions of his treating physicians; (2) in assessing his RFC for light work; (2) in evaluating his credibility; and (4) in his Step 2 assessment of Plaintiff's "severe" impairments. For the reasons discussed below, the Court concludes that all of Plaintiff's arguments are without merit

**A.     Hearing Testimony and Medical Evidence**

Plaintiff testified that he was fired from his last job at Dickie Machine Works because he missed too many days of work due to "body trouble, back pain, neck pain, shoulders, [and] arm[.]" (Tr. 321). At the time of the administrative hearing, Plaintiff lived with his 80-year old mother. (Tr. 321).

Dr. Pope treated Plaintiff for his "neck and shoulder, lower back, [and] arm." (Tr. 322). He gave Plaintiff prescription medications and a right hip injection. (Tr. 322). Dr. Nichols also treated Plaintiff for low back pain and problems. (Tr. 322). Plaintiff had some emergency room visits in Pine Bluff. (Tr. 323). Dr. Pope referred Plaintiff to a pain specialist at UAMS, Dr. Ghaleb. (Tr. 323). Plaintiff took Flexeril, Vicodin, and Naprosyn. (Tr. 324). He testified that he had no side effects from his medications. (Tr. 325).

Dr. Pope prescribed a TENS unit and physical therapy, which Plaintiff testified made him feel worse. (Tr. 326). According to Plaintiff, he had no discs in between his fourth and fifth lumbar vertebrae "and so it just goes on bone to bone." (Tr. 326). "[I]t gets into my lower right hip and goes anywhere from the center of my back all the way down through my legs and it just, it just excruciating pain." (Tr. 326).

According to Plaintiff, he had pain every day, twenty four hours a day, even without activity. (Tr. 326). He had a few good days a month but most days were bad. (Tr. 327). He also had numbness and tingling in his feet. (Tr. 327). Plaintiff could not bend or lift or pick up anything with any weight. (Tr. 327). One time he reached to pick up a paper sack and it "just put him out." (Tr. 327). As a result, he avoided lifting. (Tr. 327). He testified that: "Squatting, bending, and stooping quote, that would just put me out for the day. That's very excruciating." Tr. (328). Pushing and pulling "will do the same thing." (Tr. 328). "[M]y right hip, like I say, it is gotten to where it will pop out of place just about at any given time and when it does, it pinches up the tendons in my hip and send it, and it goes all the way to my toes." (Tr. 328). Plaintiff's neck was stiff almost twenty-four hours a day. (Tr. 329). Plaintiff had neck pain regardless of whether he was sitting still or doing any type of activity. (Tr. 329).

Plaintiff was having neck pain during his testimony. (Tr. 329) Activity made his pain worse. (Tr. 329). Plaintiff could not grip things due to pain and tingling in his hands. (Tr. 330). Plaintiff had problems with his range of motion and turning. (Tr. 332). Plaintiff had excruciating pain and shoulder problems every day, more on the right side than left, and he avoided overhead lifting. (Tr. 333).

He had a constant limp when he walked. (Tr. 334). He had problems getting out of bed and dressing himself. (Tr. 334). It was excruciating for him to step into the bathtub, and he shaved only once a week. (Tr. 335). He could sit and stand for about fifteen minutes. (Tr. 336-37). Plaintiff could only walk about the length of his house, and could only sleep two to four hours at a time. (Tr. 337). He could drive to the grocery store and the doctor's office. (Tr. 339). Plaintiff shared the housework with his eighty-year old mother. (Tr. 340). He occasionally took a five to ten minute

nap due to his Vicodin and Flexeril. (Tr. 341).

From 1997 through 2002, Plaintiff had several office visits with Dr. Scott Nichols at the Watson Chapel Family Clinic, where he assessed Plaintiff with various problems including muscle strain, back pain, lumbosacral strain, degenerative disc disease, cervical strain, shoulder pain, and chronic pain. (Tr. 113-56).

On June 25, 1997, Plaintiff underwent a lumbar MRI based on complaints of rib and back pain following a motor vehicle accident. (Tr. 110, 156). The radiologist's impression was "S1 spina bifida, otherwise, essentially negative study." (Tr. 110). On August 19, 1998, Dr. Nichols assessed Plaintiff with "improved tinea cruris" and "lumbosacral strain" and released him from work until his clinic follow up on August 24. (Tr. 147). On June 5, 2000, Dr. Nichols diagnosed Plaintif with sinusitis, bronchitis, and "DJD - neck" and took Plaintiff "off work to strict rest" until he returned to the clinic on June 8. (Tr. 140).

On August 2, 2001, Plaintiff underwent a series of x-rays of his spine. His thoracic spine showed "diffuse osteopenia, but no definite evidence of fracture or dislocation," with "no significant degenerative or destructive changes." (Tr. 255). His cervical spine was "unremarkable" but for "mild degenerative changes." (Tr. 256, 258). His lumbar spine had "mild degenerative disc disease" at L5-S1 with loss of joint space" but was otherwise unremarkable" with "no significant destructive degenerative changes." (Tr. 257). On September 6, 2001, Dr. Nichols assessed "L-S strain" and took Plaintiff "off work" until his return to the clinic on September 11. (Tr. 133-34).

On June 16, 2002, Plaintiff underwent a shoulder MRI with "signal intensity changes suggesting degenerative change within the humeral head, AC joint, and glenoid." (Tr. 198).

From 2004 through 2006, Plaintiff saw Dr. Dustin Pope, an osteopath, on nineteen occasions.

At various times, Dr. Pope diagnosed Plaintiff with chronic back pain and chronic shoulder pain, as well as pain in the neck and hip. (Tr. 265-81). On July 18, 2005, Plaintiff underwent a lumbar MRI. (Tr. 184). The radiologist noted "mild degenerative disk disease of the lower lumbar spine at L4-L5 & L5-S1. Findings are most prominent at L4-L5, which have additional findings of degenerative end plate changes. There is minimal subligamentous disk protrusion at these levels. However, there is no evidence of spinal stenosis. There is minimal bilateral foraminal disk encroachment at L4-L5, secondary to the aforementioned degenerative changes." (Tr. 184-85).

On February 3, 2006, Dr. Pope referred Plaintiff to UAMS neurologist Ahmed Ghaleb for pain management. (Tr. 283). Dr. Ghaleb examined Plaintiff and noted that he had difficulty in heel-walking and toe walking, with a decreased range of motion in his spine and joints. (Tr. 284). Plaintiff was also noted to have 5/5 strength in all extremities and intact sensation. (Tr. 284). Dr. Ghaleb noted the following: "After assessing this patient, we believe that there is no interventional pain procedure suitable for Mr. Elliott at this time, but we recommend perhaps trying Mobic [an anti-inflammatory] to help alleviate his pain." (Tr. 284).

On September 28, 2006, Dr. Pope completed a form titled "Residual Functional Capacity Form." (Tr. 305). In the space for "diagnoses," Dr. Pope checked "yes" next to lines for: arthritis, chronic pain, chronic back pain, and degenerative disc disease - lumbar spine bilateral foraminal disc encroachment at L4-5. (Tr. 305). In the space for "symptoms," Dr. Pope checked "yes" for: difficulty with heel walking, difficulty with toe walking, decreased flexion and extension in spine, decreased range of motion in both lower extremities, decreased range of motion in both shoulders more on right, and decreased range of motion on hip flexion. (Tr. 305). Finally, Dr. Pope checked "no" to these questions: (1) "claimant can do a combination of standing and walking six (6) hours

in an eight (8) hour work day;" and (2) "claimant can sit for two (2) to four (4) hours in an eight (8) hour work day." (Tr. 305).

**B. Analysis of Plaintiff's Arguments Supporting Reversal of the ALJ's Decision**

    **1.    The ALJ's Erred in Assessing Plaintiff's RFC[3]**

According to Plaintiff, the ALJ erred in assessing his RFC. RFC is a medical question and "at least some" medical evidence must support the ALJ's RFC determination. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (*citing Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Accordingly, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Id.* The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (*quoting Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir.2000)).

Plaintiff's primary contention is that the ALJ ignored or improperly analyzed evidence from his treating physicians that supported his claim for disability.[4] Plaintiff also argues that the ALJ's decision "cherry picks" unfavorable evidence and does not adequately discuss or recognize the entire record supporting his claim.

"A treating physician's opinion is generally entitled to substantial weight," but "does not automatically control in the face of other credible evidence on the record that detracts from that

---

[3] The Court will discuss together Plaintiff's first and second points for reversal, since both arguments attack the ALJ's RFC assessment.

[4] Plaintiff characterizes the ALJ's treatment of the evidence from the treating physicians as an "error of law" for failure to comply with the regulatory factors established for the consideration of treating sources, including: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. *See* 20 C.F.R. § 404.1527(d) (2006).

opinion." *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "[A]n ALJ must also consider the length of the treatment relationship and the frequency of examinations." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotations and citation omitted).

In his decision, the ALJ acknowledged Dr. Pope's assessment of Plaintiff's limitations but discounted it because it was inconsistent with Dr. Pope's own medical records and the other medical evidence in the case. (Tr. 15). This is a valid reason for discounting a treating physisan's opinion. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes"); *see also Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (noting the limited probative value of a "checklist" RFC assessment).

Importantly, all of the objective x-rays, MRIs, and other imaging of Plaintiff's spine and shoulder was unremarkable, but for mild degenerative changes. Furthermore, even Dr. Pope treated Plaintiff conservatively, without surgery, and did not limit or restrict Plaintiff from work other than in his "checklist" RFC assessment. Several of Dr. Pope's own treatment notes were inconsistent with the level of disability indicated in his RFC checklist. *See* Tr. 279 (2-24-04 positive urine screen for cocaine with an assessment of "muskuloskeletal pain - drug seeking"); Tr. 277 (11-30-04 negative straight leg raise); Tr. 276 (3-30-05 negative straight leg raise with "inconsistent responses to sensation testing"); Tr. 273 (7-7-05 negative straight leg raise); Tr. 270 (9-23-05 Plaintiff stated that physical therapy was "helpful;" but he "did not go every time"); Tr. 271 (8-30-05 "neuro exam normal"); Tr. 268 (1-10-06 Plaintiff reported "doing pretty well lately"); Tr. 266 (6-5-06 Plainitff

reported "not taking any pain meds"). Dr. Nichols, who did restrict Plaintiff from working on three occasions, only did so for very brief periods of time. Dr. Ghaleb, a pain specialist, examined Plaintiff and concluded that he was not a candidate for "interventional" pain management.

The weight of the medical evidence in this case simply does not support the level of limitation alleged by Plaintiff. Insofar as Plaintiff argues that the ALJ's decision does not explicitly discuss particular pieces of medical evidence, the ALJ, while "required to develop the record fully and fairly . . . is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) ("[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). In concluding that Plaintiff's RFC allowed him to perform light work, the ALJ accounted for Plaintiff having some limitations from pain. Furthermore, Plaintiff overlooks the fact that the ALJ's assessment of his RFC was based in part on the ALJ's determination that Plaintiff's allegations were not fully credible.[5]

For the foregoing reasons, the Court concludes that the ALJ adequately considered the opinions of Plaintiff's treating physicians and that the ALJ's RFC assessment, which was based on the ALJ's independent review of the medical record, is supported by substantial evidence.

### 2. The ALJ's Erred in Discounting Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in assessing his credibility. Plaintiff emphasizes the following points: (1) his medical records repeatedly document his complaints of, and treatment for, chronic pain; (2) he was never described as a malingerer; (3) he had over a twenty-year work history; (4) the ALJ improperly based his credibility assessment on his personal observations of Plaintiff; and (5) the ALJ improperly characterized his medication regimen. (*Pltff's App. Brf.* at 20-

---

[5]Plaintiff's challenge to the ALJ's credibility assessment is analyzed below.

24).

The ALJ evaluated Plaintiff's subjective complaints (Tr. 12-19) in light of the factors enumerated by the Court in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):[6]

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>    1. the claimant's daily activities;
>
>    2. the duration, frequency and intensity of the pain;
>
>    3. precipitating and aggravating factors;
>
>    4. dosage, effectiveness and side effects of medication;
>
>    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* at 1322 (emphasis in original).

While Plaintiff is correct that a longstanding work history is a factor that weighs in favor of a claimant's credibility, the ALJ's failure to mention work history in his credibility analysis does not require reversal. *See Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to [the claimant's] work record when determining her credibility . . . but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were sufficient to support his

---

[6]The ALJ also cited Social Security Ruling 96-7p. (Tr. 12). That Ruling tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and elaborates on them.

credibility determination.").

With respect to the ALJ's personal observations of Plaintiff, the ALJ had the following exchange with Plaintiff at the administrative hearing:

> ALJ: On a scale, a pain scale of zero to ten, zero being no pain and pain at a ten being unbearable pain, where does your pain rate?
>
> PLAINTIFF: It will stay anywhere between eight and ten.
>
> ALJ: Eight and ten?
>
> PLAINTIFF: Yes, sir.
>
> ALJ: Mr. Chadick [Plaintiff's counsel], you might want to call an ambulance and have him [INAUDIBLE].
>
> PLAINTIFF: That's where, that's where I ended up back in the fall here not long ago. I had to go in and get, to the emergency room. They had to give me three shots of morphine to settle the pain off.
>
> ALJ: Is your pain at that level now?
>
> PLAINTIFF: Yes, sir. It's pretty, pretty unbearable.
>
> ALJ: So you've [sic] at an unbearable stage of pain at this moment?
>
> PLAINTIFF: Yes, sir.

(Tr. 340-41). In his decision, the ALJ noted: "Although the claimant did exhibit some pain behavior during the hearing, there was no indication that he was experiencing a level 8 on a scale of 1-10, with 10 being the worst imaginable. This appears to be an exaggeration of his symptoms." (Tr. 15).

The Eighth Circuit has emphasized that the ALJ is free to take into account his personal observations of a claimant in making his decision, however, "the ALJ is not free to reject a claimant's credibility on account of the claimant's failure to sit and squirm during the hearing." *Cline v. Sullivan*, 939 F.2d 560, 567-68 (8th Cir. 1991). *See also Muncy v. Apfel*, 247 F.3d 728, 736

(8th Cir. 2001) (claimant's "failure to 'sit and squirm' with pain during the hearing cannot be dispositive of his credibility.")

Plaintiff's "exhibition" of "pain behavior" at the administrative hearing, or the lack thereof, is minimally probative. Had the ALJ relied on this as the dispositive factor in his credibility analysis, he clearly would have committed reversible error. However, in light of the ALJ's express recognition and discussion of the *Polaski* factors, the Court is satisfied that the ALJ's comment fell into the category of a permissible "personal observation" that does not require reversal. *See Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2008) ("While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors.").

Plaintiff also faults the ALJ for his observation that Plaintiff "'occasionally' takes prescription medication," *Pltff's App. Brf.* at 23, citing his testimony that he took Flexeral three times a day, Vicodin twice a day, and Naprosyn three times day. (Tr. 324). However, even if the ALJ's characterization understated or minimized Plaintiff's medication regimen, Plaintiff testified that he had no side effects from his medications. (Tr. 325).

As discussed earlier, there is very little objective support in the record for Plaintiff's claim of constant, excruciating pain. Given the lack of medical evidence in support of his allegations of disability, his conservative treatment, his medications, and his daily activities, the ALJ could properly discount Plaintiff's subjective complaints. *See e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel* 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount

complaints if there are inconsistencies in evidence as a whole).

Thus, the Court concludes that the ALJ's credibility analysis was proper. He followed the law and regulations, made express credibility findings, and gave multiple valid reasons for discrediting Plaintiff's subjective complaints.

### 3. The ALJ Erred in Failing to Find His "Neck and Shoulder Conditions" Were "Severe" Impairments

Finally, Plaintiff argues that the ALJ erred in his Step 2 analysis because he should have found that "degenerative conditions" in his right shoulder and neck were "severe" impairments, based on imaging tests and complaints of pain.

Plaintiff's argument is moot because the ALJ did not terminate his analysis at Step 2, but proceeded to Step 5 and considered the complete record, *including Plaintiff's complaints of limitations from pain*. After concluding that Plaintiff was not fully credible, the ALJ then arrived at his RFC determination. *See* Social Security Ruling 96-8p, at 5 ; *see also Swartz v. Barnhart*, 188 Fed. Appx. 361, (6th Cir. 2008) (where ALJ finds at least one "severe" impairment and proceeds to assess the claimant's RFC based on all of his alleged impairments, any error in failing to identify a particular impairment as "severe" at Step 2 is harmless and the "critical issue" becomes whether substantial evidence supports the ALJ's RFC assessment); *Maziarz v. Secretary of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) (failure of ALJ to find claimant's cervical condition was non-severe at Step 2 was not reversible error where ALJ also found that claimant had "severe" heart disease so that he could consider the cervical condition in the Step 5 RFC determination);

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which

contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), *superceded by statute on other grounds*; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 27th day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE